PRO HAC VICE
Jerrell Breslin, Esq.
Florida Bar # 269573
Baron, Breslin & Sarmiento
169 E. Flagler St., Suite 700
Miami, FL 33131
Tel.: (305) 577-4626 | Fax: (305) 577-4630
Email: JB@RichardBaronLaw.com

Sebastian Ohanian, Esq.
California Bar # 271403
200 N. Westlake Blvd, Suite 204
Westlake Village, CA 91362
Tel.:  786-369-5447 | Fax: 786-369-0915
Email: sebastian@ohanianlegal.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLPLUS COMPUTER SYSTEMS CORP.,<br>Plaintiff,<br>v.<br>CISCO SYSTEMS, INC.,<br>Defendant.<br><br>CISCO SYSTEMS, INC.,<br>Counter-Plaintiff,<br><br>v.<br><br>ALLPLUS COMPUTER SYSTEMS CORP.,<br>Counter-Defendant. | CASE NO.: 21-CV-00918-KAW<br><br>**MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST DEFENDANT/COUNTERCLAIMANT CISCO SYSTEMS, INC.** |

## <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

COMES NOW the Plaintiff/Counter-Defendant, ALLPLUS COMPUTER SYSTEMS CORP. ("ALLPLUS" or the "Plaintiff"), a Florida corporation, by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(c), and hereby files this Motion for Judgment on the

Pleadings (this "Motion") against the Defendant, CISCO SYSTEMS, INC. ("CISCO" or the "Defendant"), and in support states as follows:

## I.     INTRODUCTION.

1.     ALLPLUS brought this action against CISCO for declaratory relief to declare a certain purported guarantee (the "Guarantee"), executed by the Plaintiff in the Defendant's favor, invalid and unenforceable because it lacks sufficient consideration. *See* DE 1-2, *passim*.

## II.     STATEMENT OF ISSUES TO BE DECIDED.

2.     Whether the Plaintiff is entitled for judgment on the pleadings as to the Plaintiff's claim for declaratory relief.

3.     If the Court grants the Plaintiff's claim for declaratory relief, whether the Plaintiff is also entitled to judgment on the pleadings as to the Defendant's counterclaim for promissory estoppel.

## III.    FACTS.

4.     ALLPLUS is a Florida corporation engaged in the business of distributing technology products internationally. *See* DE 36 at ¶¶ 7, 9.

5.     CISCO is a corporation that develops, manufactures and sells technology services and products, including networking hardware and software, and other telecommunications equipment. *See id.* at ¶ 8.

6.     On September 9, 2009, CISCO, entered into the Specialty Two Tier NonExclusive Distributor Agreement for Small Business (the "Distributor Agreement") with ALLPLUS. *See* DE 36-1 (affixing the Distributor Agreement – also submitted herewith as Exhibit 1).

7.     Section 19.1 of the Distributor Agreement expressly provides the following terms:

> ***This Agreement shall commence on the Effective Date and continue through to the 30th November 2011***, unless sooner terminated, as set forth below. ***This***

> ***Agreement may be renewed thereafter, for another successive two (2) year term***, subject to DISTRIBUTOR satisfactorily meeting Cisco's due diligence and other business requirements per a renewal amendment signed - or electronically accepted – by both parties or by written notice from Cisco to DISTRIBUTOR given at least thirty (30) days prior to the end of the then-current term of the Agreement. Any extension shall be on the same terms and conditions then in force except as may be mutually agreed in writing by the parties.

*Id.* at §19.1.

8.     Additionally, the Distributor Agreement provided that "[n]otwithstanding the right to renew, each party acknowledges that this Agreement shall always be interpreted as being limited in duration to a definite term and that the other party has made no commitments whatsoever regarding the duration or renewal of this Agreement beyond those expressly stated herein." *Id.* at § 19.2.

9.     On January 23, 2012, ALLPLUS assigned its rights and obligations under the Distributor Agreement to Alcateia Distribuidora Ltda. ("Alcateia"), a Brazilian limited liability company. *See* DE 36-1 at 63 (affixing the Consent to Assignment– also submitted herewith as Exhibit 2).

10.     Subsequently, on or around November 16, 2017, ALLPLUS executed the Guarantee in favor of CISCO. *See* DE 36-1 at 2 (affixing the Guarantee – also submitted herewith as Exhibit 3).

11.     The Guarantee expressly states in its terms that it relates to the Distributorship Agreement:

> WHEREAS:
>
> **A.** Cisco has entered into [the Distributor Agreement] dated from September 9, 2009 and subsequent amendments, . . . with [Alcateia] . . . .

*Id.* at 1, § A.

12.     Pursuant to the Guarantee, ALLPLUS guaranteed all sums due to CISCO, up to

$400,000.00, under the Distributor Agreement, which expressly provides:

> [ALLPLUS] hereby unconditionally and irrevocably guarantees to Cisco and its respective successors and assigns the payment of all sums due by [Alcateia] up to the total amount of US$ 400,000.00 (Four hundred thousand dollars) under the [Distributor] Agreement on the terms and conditions set out in this Guaranty.

*Id.* at 1, § 1.

13.     Additionally, the Guarantee was only to "be effective from the date of last signature below and [to] continue in force until elapsed ninety (90) days following [] the [Distributor] Agreement's Effective Date of termination." *Id*. at 1, § 2.

14.     The Guarantee also purports to apply California law to the interpretation of the document. *Id*. at 4, § 13.

15.     On February 21, 2018, the parties executed an amendment to the Distributor Agreement (the "2018 Amendment"). *See* DE 36-1 at 67 (affixing the 2018 Amendment – also submitted herewith as Exhibit 4).

16.     On September 11, 2020, Cisco made a demand of AllPlus for sums due. *See* DE 36 at 7:26-28.

17.     On October 23, 2020, ALLPLUS' Amended Complaint for Declaratory Relief was filed in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida before being removed to the Southern District of Florida and then transferred to this Court. *See* DE 1-2.

18.     On May 3, 2021, CISCO filed its First Amended Answer and Counterclaim. See DE 36.

19.     CISCO has elected not to add Alcateia to this lawsuit as a named party. *See id.*

20.     CISCO has counterclaimed for Breach of Contract in Count I, which relies upon the Guarantee's, ((9DE 36-1 at 2 and Exhibit 3 hereto), enforceability, notwithstanding that the

Plaintiff seeks for this Honorable Court to deem the Guarantee to be unenforceable. *See id.* at 8:3-16.

21.     CISCO has also counterclaimed in Count II under the theory of promissory estoppel, seeking that CISCO nonetheless be able to collect the sums they are seeking under the Guarantee even if that agreement is deemed unenforceable by this Court. *See id.* at 8:17-9:6.

22.     By this Motion, the Plaintiff seeks for this Honorable Court to enter judgment on the pleadings for the Plaintiff on its Complaint, and on both Counts I and II of the Defendant's Counterclaim.

## IV.     LEGAL STANDARD.

23.      Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings at any time after the pleadings are closed, so long as the motion is filed in sufficient time that it will not delay trial. Fed. R. Civ. P. 12(c).

24.     "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

25.     Documents submitted with the complaint may be considered as part of the complaint for purposes of a motion for judgment on the pleadings. *Id.* at 1555.

26.      The standard governing a Rule 12(c) motion for judgment on the pleadings is "substantially identical" to the standard governing a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

27.     For both Rule 12(b)(6) and Rule 12(c) motions, the Court inquires whether the complaint at issue contains "sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir.2011) (finding that *Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

28.    As discussed below, to the extent that the allegations in the counterclaim conflict with, or are unsupported by, the documents attached as exhibits to the complaint or counterclaim, the documents control over the unsupported allegations. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *see also, e.g.*, *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295 (9th Cir.1998).

## V.    ARGUMENT.

**A.    THE GUARANTEE IS INVALID AND UNENFORCEABLE BECAUSE IT SEEKS TO GUARANTEE AN ANTECEDENT DEBT OF ANOTHER WITHOUT CONSIDERATION THAT IS DISTINCT FROM THE ORIGINAL OBLIGATION UNDER THE DISTRIBUTOR AGREEMENT.**

29.    Under California law, sufficient consideration is an axiomatic characteristic of valid and enforceable agreements. *See* Ca. Civ. Code §1550(4) ("[i]t is essential to the existence of a contract that there should be: . . . [a] sufficient cause or consideration."); *see also Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952 (S.D. Cal. 2007) ("It is hornbook law that a contract, to be enforceable, must be supported by consideration").

30.    Importantly, "the consideration for a promise must be an act or a return promise, ***bargained for and given in exchange for the promise***." *Simmons v. California Institute of Technology,* 34 Cal. 2d 264, 272, 209 P.2d 581 (1949) (emphasis added); *see also Passante v. McWilliam,* 53 Cal. App. 4th 1240, 1247, 62 Cal. Rptr. 2d 298 (1997) (explaining that consideration for an enforceable promise "must result from a bargain").

31.    Section 2792 of the California Civil Code states, in pertinent part, that:

> [w]here a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation.

Ca. Civ. Code § 2792.

32.    The seminal case on point applying Section 2792 of the California Civil Code is *Pacific States Sav. Etc. Co. v. Stowell*, in which the court explains that "[a] guaranty of an antecedent debt of another must be supported by a consideration distinct from the original obligation[.]" 7 Cal. App. 2d 280 (Cal. Ct. App. 1935); *see e.g., Sharman v. Longo*, 249 Cal. App. 2d 948, 952 (Cal. Ct. App. 1967) (stating that a contract of guaranty entered into after the primary agreement had been executed and the consideration supporting it has passed requires a distinct consideration) (quoting *Rusk v. Johnston*, 18 Cal. App. 2d 408, 409 (1937)); *see also Oakland Bank of Commerce v. Washington*, 6 Cal. App. 3d 793, 796 (Cal. Ct. App. 1970).

33.    Furthermore, it has been the law in California for almost 200 years that:

> where a guaranty is endorsed upon the instrument after the instrument is made, and therefore constituted no part of the original instrument, the guaranty will fail, for the reason that there is either no consideration for the promise in fact, or the new consideration is not expressed in the instrument to which reference is made.

*Hazeltine v. Larco*, 7 Cal. 32, 35 (1857).

34.    In the instant action, the Guarantee expressly seeks to guarantee Alcateia's antecedent debt without any consideration from CISCO distinct from CISCO's original obligation under the Distributor Agreement. For that precise reason, under well-settled California law, the Guarantee is invalid and unenforceable.

35.    ALLPLUS executed the Guarantee in or around November of 2017, eight years after the Distributor Agreement had been executed, in 2009, and the consideration supporting the Distributor Agreement had long since been exchanged and realized. *See* Exhibit 3. However,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CISCO failed to provide any consideration distinct from the original obligations in the Distributor Agreement.

36.     Indeed, the language of the Guarantee makes crystal clear that the debt was antecedent. ALLPLUS guaranteed all sums due to CISCO, by Alcateia, under "[the Distributor Agreement] dated from September 9, 2009 and subsequent amendments[] . . ." *Id.* at 1, § A.

37.     When the Parties executed the Guarantee, it was only to "be effective from the date of the last signature below and [to] continue in force until elapsed ninety (90) days following [] the Agreement's Effective Date of termination." Exhibit 3, at 1, § 2.

38.     The Distributor Agreement's Terms and Conditions set forth that it "shall commence on the Effective Date and continue through to the 30th November 2011, unless sooner terminated, as set forth below. [It could] be renewed thereafter, for another successive two (2) year term[] . . ." Exhibit 1 at § 19.1. Additionally, the Distributor Agreement provides that "[a]ny extension shall be on the same terms and conditions then in force except as may be mutually agreed in writing by the parties. [and] Notwithstanding the right to renew, each party acknowledges that this Agreement shall always be interpreted as being limited in duration to a definite term . . .*" Id.* at § 19.1-2.

39.     Therefore, the Distributor Agreement expresses that any extensions or renewals were simply a continuation of the original 2009 Agreement, as opposed to a new contract requiring additional consideration. Here, based on the Court's reasoning in *Hazeltine*, the Guarantee must fail for lack of consideration because any new consideration was not expressed in the Distributor Agreement. *See* 7 Cal. at 35.

40.     As such, there can be no question that at the time the Guarantee was entered it applied to the long existing Distributor Agreement, and that no consideration was exchanged and

that it specifically did not address that CISCO was relying on the Guarantee, or would rely on it, for any future acts – including amendments or extensions.

41.   Moreover, even assuming *arguendo* that somehow the consideration did not predate the Guarantee in the form of an antecedent debt because the parties entered into the Guarantee so that CISCO would extend the 2009 Distributor Agreement, case law that would support such an argument would be distinguishable and stand in contrast from the facts of this case because the extension was not expressly stated in the Guarantee.

42.   Here, as stated, the Guarantee is silent as to reliance on it for any purpose other than to guarantee the debt that existed on the date the Guarantee was signed.

43.   For instance, the Ninth Circuit found that sufficient consideration was found for a Guaranty Agreement where "the only consideration to which the Modification and Guaranty Agreements *refer* is [an] extension of the payment for the second royalty advance." *Arnold Fashion Ltd. P'ship v. Celeb Sales Inc.*, No. 97-56255, No. 97-56349, No. 98-55796, 1999 U.S. App. LEXIS 4745 at *7 (9th Cir. Mar. 18, 1999).

44.   However, as stated above, unlike the guaranty in *Arnold Fashion LP*, here the Parties' Guarantee *does not reference or mention any extension* and is entirely predicated on the 2009 Distributor Agreement. *See generally* Exhibit 3. Furthermore, the Guarantee does not reference any new consideration, such as requiring the execution of the Guarantee in order to extend the 2009 Distributor Agreement. *Id.*

45.   Additionally, in *First Bank & Tr. v. Rothman*, the court summarized that where a guaranty was written and signed *before* delivery of a note, the obligation of all the parties to the note, including that of the guarantor, became effective at the same moment, and there was good consideration for the guaranty. 2002 WL 31087841, at *5 (Cal. Ct. App. Sept. 19, 2002).

46.     However, here, unlike *Rothman*, the Guarantee here was written **long after** the principal contract, i.e., the Distributor Agreement, because the Distributor Agreement expresses that any extensions or renewals were simply a continuation of the original 2009 Agreement, rather than a new contract requiring additional consideration. Exhibit 1 § 19.1-2.

47.     A contract of guaranty, like the one here, made *after* the primary agreement has been executed and the consideration supporting it has passed requires new consideration. *See Oakland Bank of Commerce v. Washington*, 6 Cal. App. 3d 793, 796, 86 Cal. Rptr. 276 (1970) (finding adequate consideration where guarantors, stockholders and directors of the borrower, executed a continuing guarantee; holding present or future lending of money is sufficient consideration); *see also Bank of Italy v. Wetzel*, 82 Cal. App. 240, 246, 255 P. 254 (1927) (finding no consideration where guarantees were signed about a year after the bank was sold and there was no evidence the guarantees were any part of the original consideration).

48.     Thus, for all of the reasons stated above, because the Guarantee is entirely devoid of consideration from the Defendant and expressly seeks to guaranty an antecedent debt, and only an antecedent debt, and fails to reference any future reliance on it for extensions or anything other than the sums due under the original agreement, the Guarantee is invalid and unenforceable.

**B.    CISCO CANNOT PREVAIL UNDER THE DOCTRINE OF PROMISSORY ESTOPPEL WHERE ITS CLAIMS ARE BASED SOLELY ON PROMISES MADE IN THE GUARANTEE AND AN ADEQUATE REMEDY AT LAW <u>EXISTS.</u>**

49.     In Count II of CISCO's Counterclaim, CISCO alleges:

28.     Through the Guarantee, AllPlus promised to pay any amounts that Alcateia owed to Cisco, but defaulted upon, up to $500,000.00.

29.     Cisco reasonably, foreseeably, and actually relied upon that promise by granting Alcateia a line of credit.

30.     Cisco further reasonably, foreseeably, and actually relied upon

AllPlus's promise by entering into the 2018 Amendment.

> 31.    That reliance inured to Cisco's detriment, as Alcateia defaulted on its obligations under the line of credit, the Distributor Agreement, and the 2018 Amendment.

> 32. By breaching its promise to pay, documented in the Guarantee, Allplus caused Cisco financial damage, including the $219,959.64 in outstanding bills on which Alcateia defaulted, plus interest, plus attorneys' fees and related costs of recovery.

DE 36 at 8:23-9:5.

50.    However, under California law, CISCO cannot seek to have this Court enforce the invalid and unenforceable Guarantee under the doctrine of promissory estoppel because (i) CISCO's claim of promissory estoppel is based solely on promises made in a contract, i.e., the Guarantee; (ii) promissory estoppel is an equitable remedy and an adequate remedy at law exists – namely monetary damages against Alcateia, (iii) CISCO cannot show detrimental reliance on the alleged "promise" of ALLPLUS, and (iv) CISCO's recovery under promissory estoppel would undermine the long-standing policy of requiring independent consideration where a party agrees to guarantee the antecedent debt of another.

> ***i.*** ***CISCO Cannot Seek to Have this Court Enforce the Guarantee Under the Doctrine of Promissory Estoppel Because Its Claims are Based Solely on Promises Made in the Guarantee Itself.***

51.    Under California law, promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance. *See Boon Rawd Trading Int'l Co., Ltd. V. Paleewong Trading Co*., Inc., 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010).

> *a.*    *The Promissory Estoppel Claim is Improperly Based on the Guarantee.*

52.    Additionally, a plaintiff may not prevail on a promissory estoppel claim based

solely on promises made in a contract. *See, e.g.*, *JMP Secs. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1041 (N.D. Cal. 2012).

53.     Under California law, "the same allegations that give rise to a breach of contract claim cannot also give rise to a claim for promissory estoppel, as the former [is] predicated on a promise involving bargained for consideration, while the latter is predicated on a promise predicated on reliance in lieu of such consideration." *Id.* at 1041 (quoting *Co-Investor, AG v. Fonjax, Inc.*, C 08-01812 SBA, 2008 U.S. Dist. LEXIS 80973, 2008 WL 4344581, at *3 (N.D. Cal. Sept. 22, 2008)).

54.     In *Drake v. Option One Mortg. Corp.*, the defendants argued that the plaintiffs failed to plead promissory estoppel because the plaintiffs also alleged the existence of a contract in their causes of action, and the Court found that:

> Although Plaintiffs are free to bring a promissory estoppel claim as an alternative to a breach of contract claim, the promissory estoppel claim cannot allege the existence of a contract. In their promissory estoppel claim, Plaintiffs allege that the Defendants promised to pay them according to the Standard Severance Package if they remained on the job until the sale closing date. Plaintiffs have alleged the existence of a contract that covers the dispute over the severance payments, so their claim for promissory estoppel fails as a matter of law.

No. SACV 09-01450-CJC (RNBx), 2010 U.S. Dist. LEXIS 147721, at *13 (C.D. Cal. Apr.15, 2010).

55.     Accordingly, under California law, CISCO's claim for promissory estoppel must fail because it is based solely on the Guarantee and, as such, fails to meet the required elements of promissory estoppel.

> b.     *The "Line of Credit" Argument Fails for the Same Lack of Reference.*

56.     As above stated, the Guarantee clearly and expressly applied only to sums due under the existing Distributor Agreement. There is nothing in the Guarantee, attached hereto as

Exhibit 3, or the 2018 Amendment, attached hereto as Exhibit 4 – or any of the other exhibits for that matter attached to either parties' pleading – that references a "line of credit."

57.     Nonetheless, out of thin air, CISCO alleges that "[t]hrough the Guarantee, AllPlus promised to pay any amounts that Alcateia owed to Cisco . . . [and] Cisco reasonably, foreseeably, and actually relied upon that promise by granting Alcateia a line of credit." DE 36 at 8:28-29.

58.     However, *the terms of the Guarantee expressly only guarantee payment obligations of Alcateia under the Distributor Agreement*. *See* Exhibit 1 at 1, § 1. Not a future "line of credit".

59.     There is no evidence pled whatsoever that ALLPLUS ever promised to pay any amounts related to "lines of credit" that Alcateia entered into outside the scope of the Distributor Agreement's terms. *See* Exhibit 1.

60.     As a factual matter and to reiterate, the words "line of credit" appear nowhere in any of the exhibits attached to either ALLPLUS or CISCO's pleadings.

61.     Simply put, ALLPLUS guaranteed an antecedent debt which were the sums due under the Distributor Agreement and CISCO, in a clever attempt at pleading, calls those same sums due a future "line of credit," attempting to somehow make the sums due under the Distributor Agreement a separate transaction.

62.     Simply put, the "line of credit" allegation and argument is a red herring. There is no "line of credit" there is simply the same debt that Alcateia owed CISCO under the Distributor Agreement.

63.     Therefore, CISCO cannot allege a clear and unambiguous promise giving rise to its promissory estoppel claim and, in turn, CISCO cannot prove detrimental reliance based upon said promise. *See Macris v. Bank of Am., NA*, 2012 U.S. Dist. LEXIS 10633, 2012 WL 273120,

at *8 (E.D. Cal. Jan. 30, 2012) (dismissing plaintiff's promissory estoppel claim after finding that plaintiff failed to plead facts showing clear promise of loan modification on which plaintiffs detrimentally relied); *see also Bhandari v. Capital One, N.A.*, 2012 U.S. Dist. LEXIS 167410, 2012 WL 5904694, at *5 (N.D. Cal. 2012) (plaintiffs failed to show likelihood of success on promissory estoppel claim where alleged promise to suspend foreclosure proceedings as long as plaintiffs complied with the terms of the forbearance agreement was ambiguous and speculative and plaintiffs failed to show detrimental reliance).

64.     Thus, CISCO's claim for promissory estoppel must fail because its claims are based solely on the Guarantee and CISCO cannot adequately allege the elements of promissory estoppel.

65.     Further, CISCO's attempt to transform the sums due it under the Distributor Agreement into a new and separate "line of credit" based on the promise made in the Guarantee is imaginary and not at all based on the express language in the Distributor Agreement or Guarantee and wholly unsupported by the exhibits filed in this case by both the Plaintiff and the Defendant.

### ii.     *CISCO's Claim for Promissory Estoppel Must Also Fail Because an Adequate Remedy at Law Already Exists in the Form of Monetary Damages Against Alcateia.*

66.      Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires." *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310, 96 Cal. Rptr. 2d 747, 1 P.3d 63 (2000).

67.     "It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law[.]" *McKesson HBOC, Inc. v. New York State Common Retirement Fund*, 339 F.3d 1087, 1091 (9th Cir. 2003); *Mort v. United*

*States*, 86 F.3d 890, 892 (9th Cir. 1996) (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381, 112 S. Ct. 2031, 119 L. Ed. 2d 157,(1992))

68.     Promissory estoppel is appropriate where "injustice may only be avoided by enforcing a promise," and may be limited where injustice may be avoided through an alternative, adequate remedy. *See Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1017 (9th Cir. 2003)* ("affirming district court's dismissal of plaintiff's promissory estoppel claim because it had "adequate remedies through its fraud and negligent misrepresentation claims"); *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, No. 05cv636 JLS (POR), 2008 U.S. Dist. LEXIS 130364, at *9 (S.D. Cal. Apr. 22, 2008) (dismissing promissory estoppel claim where the moving party had adequate remedies through its contract claims).

69.     Similar to the parties that claimed promissory estoppel in *Glen Holly Entm't, Inc.* and *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC,* CISCO may have sought an adequate remedy in the form of monetary damages sought against Alcateia. [1]

70.     Thus, CISCO's claim for promissory estoppel must fail because an adequate remedy already exists in the form of money damages against Alcateia.

### iii.     *CISCO's Claim for Promissory Estoppel Must Fail Because CISCO Did Not Rely on ALLPLUS's Alleged "Promise" to CISCO's Detriment.*

71.     The fact that CISCO did not join Alcateia necessarily evidences an absence of CISCO's detrimental reliance on ALLPLUS's alleged "promise," because "detrimental reliance requires a showing that plaintiff has undertaken a sufficient change of position in reliance on defendant's promise." *Penney v. Wells Fargo Bank, NA*, 2012 U.S. Dist. LEXIS 78794, 2012 WL 2071705, at *5 (C.D. Cal. June 8, 2012) (citing *Quinteros v. Aurora Loan Servs*,, 740 F.

---

[1] CISCO had ample opportunity to join Alcateia and sue Alcateia on its debt in this action, and CISCO's failure to bring in Alcateia should not accrue to their benefit.

Supp. 2d 1163, 1172 (E.D. Cal. 2010)).

72.    California courts routinely deny relief on promissory estoppel claims where the movant fails to plead and/or provide evidence of detrimental reliance. *See Mehta v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 33407, 2011 WL 1157861, at *3 (S.D. Cal. Mar. 29, 2011) (dismissing promissory estoppel claim on the grounds that the plaintiff's allegations that he did not pursue other courses of action to avoid foreclosure in reliance on Wells Fargo's statement that it would postpone the foreclosure sale was insufficient as the plaintiff never attempted to file a bankruptcy action and Wells Fargo never told the plaintiff not to file for bankruptcy); *see also Sohal v. Fed. Home Loan Mortgage Corp.*, 2012 U.S. Dist. LEXIS 172705, 2012 WL 6044817, at *10 (N.D. Cal. Dec. 5, 2012) (granting summary judgment on promissory estoppel claim in favor of defendants where plaintiff presented no evidence that defendants asked the plaintiffs to forego any particular course of conduct as a pre-requisite to negotiations of loan modification); *Bhandari v. Capital One, N.A.*, 2012 U.S. Dist. LEXIS 167410, 2012 WL 5904694, at *5 (N.D. Cal. 2012) (plaintiffs failed to show likelihood of success on promissory estoppel claim where alleged promise to suspend foreclosure proceedings as long as plaintiffs complied with the terms of the forbearance agreement was ambiguous and speculative and plaintiffs failed to show detrimental reliance); *Macris v. Bank of Am., NA*, 2012 U.S. Dist. LEXIS 10633, 2012 WL 273120, at *8 (E.D. Cal. Jan. 30, 2012) (dismissing plaintiff's promissory estoppel claim after finding that plaintiff failed to plead facts showing clear promise of loan modification on which plaintiffs detrimentally relied).

73.    Cisco pleads that it detrimentally relied upon ALLPLUS's alleged "promise," by "granting Alcateia a line of credit [and] entering into the 2018 amendment." DE 36 at 8:25-28; Exhibit 4.

74.     However, as stated at length above, the terms of the Guarantee only guarantee payment obligations of Alcateia *under the Distributor Agreement*, and ALLPLUS never promised to pay any amounts related to any "lines of credit" that Alcateia may have entered into outside the scope of the Distributor's Agreements terms. *See supra ¶* 58. [2]

75.     Further, other than the bare allegation that there was a "line of credit", no documents attached to CISCO's pleading support the allegation. On the contrary, "line of credit" is not mentioned in any of the exhibits to either parties' pleadings.

76.     Additionally, the Distributor Agreement provides that "[n]otwithstanding the right to renew, each party acknowledges that [the Distributor] Agreement shall always be interpreted as being limited in duration to a definite term . . ." Exhibit 1 at § 19.  Thus, the parties agreed to limit their interpretation of the 2018 Amendment to an interpretation of the original Distributor Agreement signed in 2009, rather than a new contract.

77.     For these reasons, CISCO's promissory estoppel claim must fail for CISCO's lack of detrimental reliance on ALLPLUS's alleged "promise."

   *iv.     If This Court Were to Grant CISCO Relief Under Promissory Estoppel, Such a Decision Would Undermine Every Situation Where a Guarantee of a Third-Party's Antecedent Debt is Set Aside for a Lack of Additional Consideration.*

78.     CISCO seeks relief in equity as to Count II.

79.     CISCO should not be able to recover under promissory estoppel because CISCO's recovery would require an *inequitabl*e enforcement of the otherwise unenforceable Guarantee.

80.     Fundamentally, no guaranty may exist without an antecedent or contemporaneous promise as a guaranty, by its nature, requires the promise of another that is then guaranteed by a

---

[2] To the extent such a "line of credit" exists.

third party. Whether such a promise is expressed in a contract and supported by bargained for consideration or otherwise, it is impossible for a guaranty to exist without the predicate promise that it guarantees.

81.     If this Court allows CISCO to recover under the theory promissory estoppel, this Court's decision would undermine the entire body of California statutory law and caselaw that has been established in its jurisprudence to require additional consideration — distinct from the consideration in the underlying principal agreement — to bind a party that guarantees the antecedent debt of another.

82.     Simply put, every time a guaranty is set aside for lack of consideration the promisee would simply collect the same sum by enforcing the unenforceable contract under the theory of promissory estoppel by saying it relied on the promise – notwithstanding its unenforceability.

83.     Such a result would render the entire body of law and rationale for not enforcing a guarantee for lack of separate consideration meaningless.

84.     Therefore, to equitably preserve the policy requirement of distinct consideration in agreements where a party guarantees the antecedent debt of another, this Court should reject in equity CISCO's theory of alternate recovery under the theory of promissory estoppel.


Wherefore, it is respectfully requested that this Honorable Court grant ALLPLUS judgment on the pleadings on Count I of its complaint and Counts I and II of CISCO's Counterclaim.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of the Court and served via email through CM/ECF upon all counsel of record.

On June 14, 2021.

*PRO HAC VICE*
**COUNSEL FOR ALLPLUS**

**Baron, Breslin & Sarmiento**
**/s/ Jerrell Breslin**

Jerrell Breslin, Esq.
Florida Bar # 269573
Email: JB@RichardBaronLaw.com
Baron, Breslin & Sarmiento, Attorneys at Law
The DuPont Building
169 East Flagler Street
Suite 700
Miami, Fl 33131
Tel.: 305-577-4626
Fax.: 305-577-4630

**Local Counsel**

Sebastian Ohanian, Esq.
Cal. Bar 271403
200 N. Westlake Blvd, Suite 204
Westlake Village, CA 91362
And
1 Alhambra Plaza, Suite 1225
Coral Gables, FL 33134
Tel.  786-369-5447
Fax. 786-369-0915
Email: sebastian@ohanianlegal.com