Isaac Walrath (CA 317767)
Benesch, Friedlander, Coplan & Aronoff LLP
One Market Street – Spear Tower
36th Floor
San Francisco, California 94105
Telephone:   (628) 600-2250
Facsimile:    (628) 221-5828
iwalrath@beneschlaw.com

Michael Meuti (CA 227939)
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone:   (216) 363-4500
Facsimile:    (216) 363-4588
mmeuti@beneschlaw.com

*Attorneys for Defendant and
Counterclaimant, Cisco Systems, Inc.*

# IN THE UNITED STATE DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLPLUS COMPUTER SYSTEMS CORP., | Case No. 4:21-cv-00918-KAW |
| Plaintiff, | **DEFENDANT AND COUNTERCLAIMANT CISCO SYSTEMS, INC.'S OPPOSITION TO ALLPLUS COMPUTER SYSTEMS CORP.'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| CISCO SYSTEMS, INC., | |
| Defendant. | |
| | Date: August 5, 2021 at 1:30 p.m. |
| CISCO SYSTEMS, INC., | Hon. Kandis Westmore |
| Counterclaimant, | |
| v. | |
| ALLPLUS COMPUTER SYSTEMS CORP., | |
| Counterdefendant. | |

## I.      INTRODUCTION

The Court should deny AllPlus Computer Systems Corp.'s ("AllPlus") Motion for Judgment on the Pleadings Against Defendant/Counterclaimant Cisco Systems, Inc. ("Cisco").   AllPlus's motion misapprehends the law and ignores the well-pleaded factual allegations in Cisco's Counterclaim.

Cisco's breach-of-counterclaim survives because the Guarantee AllPlus entered and now seeks to invalidate is valid and enforceable.  After entering into the Guarantee, Cisco increased AllPlus's line of credit and extended the Cisco/AllPlus distributorship.  Those acts qualify as valid consideration, thwarting AllPlus's suggestion that the Guarantee was not a valid contract.

Even if that were not the case, Cisco's Counterclaim pleads a valid claim for promissory estoppel, making dismissal of the Counterclaim inappropriate.  Further, the pleadings—read as a whole—reveal issues of disputed material fact between the parties.  Under Ninth Circuit precedent, those factual disputes preclude judgment as a matter of law.

For each of these reasons, the Court should deny AllPlus's motion.

## I.      STATEMENT OF RELEVANT FACTS

### A.      AllPlus guaranteed the debt of its Brazilian affiliate Alcateia to Cisco, and Alcateia defaulted, triggering AllPlus's obligation to pay Cisco.

From 2009 to 2020, Cisco and its related Brazilian entity (Cisco Comercio e Servicos de Hardware e Software do Brasil Ltda. ("Cisco Brazil")) and AllPlus and its related Brazilian entities (Alcateia Distribuidora Ltda., Alcateia Engenharia de Sistemas Ltda., and Abano RJ Distribuidora Ltda. (collectively, "Alcateia")) had a business relationship.  Specifically, AllPlus and Alcateia imported and sold Cisco products in Brazil.  Dkt. No. 36 at 6:26 - 7:15 (First Am. Ans. & Counterclaim of Def't Cisco Sys., Inc. ("FAAC")).   During this period, Cisco, AllPlus, and Alcateia operated under a Distributor Agreement that the parties periodically renewed and reentered.  Dkt. No. 36-1 at 7 (the Distributor Agreement); *see also*, *e.g.*, 36-1 at 67 (the sixth amendment to the Distributor Agreement, which among other things, extended its term into 2020).

On November 30, 2016, AllPlus entered a guarantee in favor of Cisco and Cisco Brazil, where AllPlus guaranteed the "total amount of US$ 400,000.00 (Four Hundred Thousand Dollars)" on behalf of Alcateia.  Dkt. No. 1-1 at 11, ¶ 1 (Guarantee dated and executed by AllPlus on November 30, 2016, and attached to AllPlus's Complaint for Declaratory Relief).

A year later, on November 22, 2017, AllPlus entered another guarantee in favor of Cisco and Cisco Brazil, this time guaranteeing "the total amount of Five Hundred Thousand Dollars (US$ 500,000.00)" in favor of Cisco on behalf of Alcateia.  Dkt. No. 36-1 at 2, ¶ 1, and at 5 (Guarantee dated November 16, 2017, and executed by AllPlus on November 22, 2017).  This brief refers to that agreement as the "2017 Guarantee."

Two months after the parties entered the 2017 Guarantee, the parties agreed to extend their distributorship. Dkt. 36-1 at 67 ¶ 1 (Exhibit 4, Amendment No. 6 to the Specialty Two Tier NonExclusive Distributor Agreement, dated Feb. 21, 2018).  Through that agreement (referred to here as the "2018 Amendment"), the parties agreed to continue their business relationship for an additional two years, through 2020.

Later, Alcateia defaulted on its payment obligations, and on September 11, 2020, Cisco sent AllPlus a letter (a) notifying AllPlus of Alcateia's default; (b) demanding that AllPlus pay Cisco $219,959.64 per the Guarantee; and (c) informing AllPlus that if it did not pay, Cisco would pursue legal remedies.  Dkt. No. 36 at 7:26-28.

**B.    AllPlus sued in Florida to invalidate the 2017 Guarantee, and Cisco transferred the case to this Court and filed a Counterclaim.**

In response to Cisco's letter, AllPlus initiated this action in the Circuit Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida.  AllPlus sought declaratory relief to invalidate the guarantee it entered on November 30, 2016.  Dkt. No. 1-1 (Complaint for Declaratory Relief, filed September 21, 2020).  Subsequently, AllPlus amended its complaint, where, among other things, it now requests declaratory relief from the 2017 Guarantee.  Dkt. No. 1-2 at 2 ¶ 7 (Amended Complaint for Declaratory Relief, filed October 23, 2020).

Cisco removed this case to federal court, transferred this case to this Court, and filed its Counterclaim. Dkt. No. 1 (Notice of Removal); Dkt. No. 3 (Cisco's original Answer); Dkt. No 13 (Order granting Motion to Transfer Venue); Dkt. No. 36 (Cisco's FAAC).  The Counterclaim asserts a breach-of-contract claim for AllPlus's refusal to meet its obligations under the 2017 Guarantee.  Dkt. No. 36 at 8:5-16.  In the alternative, Cisco asserts a claim for promissory estoppel, to require AllPlus to live up to the promises it made in the 2017 Guarantee.  *Id.* at 8:19 - 9:7.

Hence, the operative "complaint" for the purposes of this motion is the counterclaim contained in Cisco's Counterclaim (Dkt. No. 36).

AllPlus filed this pending motion on June 14, 2021, and filed its Answer and Affirmative Defenses to Counterclaim a week later.  Dkt. Nos. 46, 51.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial." *Junkersfeld v. Per Diem Staffing Sys., Inc.*, No. 4:18-CV-07795-KAW, 2019 WL 2247768, at *1–2 (N.D. Cal. May 24, 2019).  Where a counterclaim is interposed, the filing of a reply to the counterclaim marks the close of proceedings." *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020), *on reconsideration*, No. 3:18-CV-0840-GPC, 2020 WL 3840559 (S.D. Cal. July 8, 2020).

"'[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog,' because the motions are 'functionally identical.'" *Junkersfeld*, 2019 WL 2247768, at *1–2 (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  "A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim." *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  "When considering a motion to dismiss under Rule 12(c), the court 'must accept all factual allegations in the [operative pleading] as true and construe them in the light most favorable to the non-moving party.'" *Id*. (citing *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).  A judgment on the pleadings may only be granted "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.  That being said, "[w]hen a court grants a Rule 12(c) motion, leave to amend should be freely given if it is possible that further factual allegations will cure any defect." *Lewis v. Beneficial Cal., Inc.*, No. 4:17-CV-03575-KAW, 2018 WL 6169348, at *2 (N.D. Cal. Nov. 26, 2018); (citing *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013)).

Accordingly, the pending motion requires evaluation of the allegations in Cisco's counterclaim, located at Dkt. No. 36 at 5 to 9, to be accepted as true and construed in the light most favorable to Cisco. And should the Court grant the pending motion, leave to amend should be "freely given" to cure any defects with further factual allegations.

1

## III.   ARGUMENT

2    AllPlus's motion for judgment on the pleadings fails because Cisco's counterclaim sets forth—at

3    the very least—cognizable legal theories and pleads sufficient facts in support.  As set forth below, the

4    Guarantee at issue in this case is valid, enforceable, and supported by separate consideration.  And even

5    if the Guarantee were somehow defective, Cisco has pled a valid claim for promissory estoppel.

6    Additionally, as separate and independent grounds for denial, the motion improperly seeks

7    judgment as a matter of law even though the face of the pleadings reveal that material issues of fact exist.

8    ### A.   The Guarantee Is Valid, Enforceable, and Supported By Separate Consideration.

9    Under California law, guarantees are creatures of statute, governed by Civil Code section 2787 *et.*

10   *seq.*  Guarantees "must be in writing," although the writing "need not express a consideration."  Cal. Civ.

11   Code § 2793.  Accordingly, a court may consider extrinsic evidence in determining whether a guarantee

12   is supported by consideration. *See* Cal. Civ. Code § 2837 ("In interpreting the terms of a contract of

13   suretyship, the same rules are to be observed as in the case of other contracts.").

14   A guarantee, like other contracts, requires consideration.  "Consideration consists of either a

15   benefit to the promisor or a detriment to the promisee.  It is enough that something is promised, done,

16   forborne, or suffered by the party to whom the promise is made as consideration for the promise made to

17   him." *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 987 (2015).

18   Whether a guarantee requires new consideration, independent from the consideration supporting

19   the primary agreement, depends on timing.  "'A contract of guaranty made *after* the primary agreement

20   has been executed and the consideration supporting it has passed requires a new consideration.'" *First*

21   *Bank & Tr. v. Rothman*, No. B148123, 2002 WL 31087841, at *5 (Cal. Ct. App. Sept. 19, 2002) (emphasis

22   added) (citing *Oakland Bank of Com. v. Washington*, 6 Cal. App. 3d 793, 796 (Cal. Ct. App. 1970)).  By

23   contrast, "'if the guaranty was written and signed *before* delivery [of a note], the obligation of all the

24   parties to the note, including that of the guarantor, became effective at the same moment, and there was a

25   good consideration for the guaranty.'" *Id*. (emphasis added) (citing *Kennedy & Shaw Lumber Co. v. S.S.*

26   *Constr. Co.*, 123 Cal. 584, 587 (1899)).

27   On November 22, 2017, AllPlus entered the 2017 Guarantee, promising to pay up to $500,000 of

28   any Alcateia debt owed to Cisco. Dkt. No. 1-2 at 10 ¶¶ 1 and 7.  As separate consideration in support of

4

the Guarantee, Cisco extended a $500,000 credit line to Alcateia, replacing a previous credit line for $400,000. Dkt. No. 36 at 7:19; *and compare* Dkt. No. 1-1 at 11 ¶ 1 (showing that the 2016 Guarantee covered only up to $400,000 of Alcateia's debt); *with* Dkt. No. 1-2 at 10, ¶ 1 (showing that the 2017 Guarantee increased AllPlus's guarantee from $400,000 to $500,000 of Alcateia's debt).

Accordingly, AllPlus's own pleadings show that (1) independent consideration supports the 2017 Guarantee, and (2) that consideration postdates the 2017 Guarantee (*see* Dkt. No. 36 at 7 ¶¶ 14–16)[1]. The consideration consists of a $500,000 line of credit Cisco extended to Alcateia that replaced a previous $400,000 credit line with Cisco, and the two credit lines match the amounts AllPlus promised to pay on Alcateia's behalf through the 2016 and 2017 guarantees.

Even if the $100,000 increase in credit were not sufficient consideration to support the Guarantee —it is— additional separate consideration supports the Guarantee. Specifically, Cisco agreed, through the 2018 Amendment, to continue doing business with Alcateia. Dkt. No. 36-1    at 67 ¶ 1; *see Arnold Fashion LP v. Celeb Sales Inc.*, 172 F.3d 875 (9th Cir. 1999) (a "deadline extension provided was sufficient and 'material' consideration to sustain" a guaranty) (citing *Del Riccio v. Photochart*, 124 Cal. App. 2d 301, 312 (1954)).

Rather than acknowledge these plain facts, AllPlus's motion errantly suggests that the documents attached to the pleadings somehow contradict Cisco's plain factual allegations. Not so. If anything, it is AllPlus's allegations that conflict:

*First*, the 2017 Guarantee makes clear that it relates to *future*, and not merely antecedent debt, because it states that it is a "continuing guarantee." Dkt. No. 36-1 at 3, ¶ 7 ("The Guarantor [AllPlus] agrees that this Guarantee is a continuing guarantee"). A "continuing guarantee" is defined by statute as "[a] guaranty relating to a *future* liability of the principal, under successive transactions, which either continue his liability or from time to time renew it after it has been satisfied." Cal. Civ. Code § 2814 (emphasis added). Hence, the 2017 Guarantee's plain terms contradict AllPlus's assertions that "the

---

[1] While the Counterclaim does not allege the date of the line-of-credit increase, documents that Cisco's counsel obtained after the Counterclaim was filed show that the line of credit was extended on November 26, 2017. If the Court were to grant AllPlus's motion (which it should not), Cisco will include that date in an amended counterclaim.

Guarantee makes crystal clear that the debt was antecedent."  (Dkt. No. 46 at 8:3-4).

*Second*, the documents—and AllPlus's own pleadings and papers—show that its affiliate Alcateia owed money to Cisco, and that AllPlus entered into the 2017 Guarantee to secure that debt.  *See*, *e.g.*, Dkt.1-2 at 3 ¶ 18 (the 2017 Guarantee "seeks to guaranty an antecedent *debt* of another," referencing Alcateia) (emphasis added).  Whether or not the words "line of credit" appear in documents attached to the pleadings doesn't change the fact that AllPlus entered the 2017 Guarantee to secure Alcateia's debt to Cisco.  There is no "magic words" requirement here.

*Third*, the two guarantees attached to AllPlus's pleadings, taken together, show that AllPlus entered into the 2017 Guarantee to secure a $500,000 credit line from Cisco, representing a $100,000 increase over Alcateia's prior credit line of $400,000.  *Compare* Dkt. No. 1-1 at 11, ¶ 1 (showing that circa 2016 AllPlus guaranteed up to $400,000 of Alcateia's debt); *with* Dkt. No. 1-2 at 10, ¶ 1 (showing that the 2017 Guarantee increased AllPlus's guarantee $100,000, to $500,000 of Alcateia's debt).  Accordingly, Cisco's allegations do not "conflict" with documents attached to the pleadings.

For each of these reasons, Cisco has properly alleged that AllPlus breached the 2017 Guarantee.  The Court should deny AllPlus's motion.

### B.   Cisco Adequately Pled Its Promissory Estoppel Claim In The Alternative To Its Breach Of Contract Claim.

Cisco adequately pled its promissory estoppel claim in the alternative to its breach-of-contract claim.  "Although a cause of action for promissory estoppel is inconsistent with a cause of action for breach of contract based on the same facts . . . '[w]hen a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations.'"  *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) (citing *Mendoza v. Cont'l Sales Co.*, 140 Cal. App. 4th 1395, 1402 (2006)).  "The purpose of [promissory estoppel] doctrine is to make a promise that *lacks consideration* . . . binding under certain circumstances."  *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010) (emphasis added).  Since the crux of AllPlus's case is its errant claim that the Guarantee is invalid for "lack of sufficient consideration," Cisco's alternative promissory-estoppel claim is appropriate and consistent with modern legal practice.  *See* Dkt. No. 1-2 at 1, ¶ 1 (AllPlus opens its operative complaint

asserting that the Guarantee is "invalid and unenforceable because it lacks sufficient consideration").

Moreover, Cisco's allegations satisfy the elements for promissory estoppel. Those elements are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 901 (2005).

For the first element, Cisco pled that "AllPlus promised to pay any amounts that Alcateia owed to Cisco." Dkt. No. 36 at 8:23-24. For the second and third elements, Cisco pled that it "reasonably, foreseeably, and actually relied" on AllPlus's promise "by granting Alcateia a line of credit" and "entering into the 2018 Amendment" that extended the Distributor Agreement. *Id.* at 8:25-28. And for the fourth element, Cisco pled it was injured when AllPlus failed to follow through on its promise to pay when Alcateia defaulted on $219,959.64 in outstanding bills. *Id.* at 9:3-5.

Additionally, AllPlus's reliance on *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029 (N.D. Cal. 2012), and *Drake v. Option One Mortg. Corp.*, No. SACV0901450CJCRNBX, 2010 WL 11464891, at *5 (C.D. Cal. Apr. 15, 2010), is misplaced.

*JMP* is inapposite because "no party dispute[d] that JMP's promise to perform under the contract [was] supported by consideration." *See JMP Sec. LLP*, 880 F. Supp. 2d at 1041–42 ("The only thing at issue here is under which provision of the contract JMP will be paid for its services, not whether there was a contract for services at all or whether the promises contained in the contract were supported by consideration"). In contrast, here, the parties dispute whether the 2017 Guarantee is valid for lack of consideration, so the promissory estoppel claim is appropriate.

*Drake* does not apply because Cisco did not allege "the existence of a contract" in its promissory-estoppel claim. *See Drake*, 2010 WL 11464891, at *5 (C.D. Cal. Apr. 15, 2010) ("Although Plaintiffs are free to bring a promissory estoppel claim as an alternative to a breach of contract claim, the promissory estoppel *claim* cannot allege the existence of a contract") (emphasis added). In contrast, Cisco's promissory estoppel claim makes clear that it only applies "[i]nsofar as the Court determines that the Guarantee is not a legally enforceable contract." Dkt. No. 36 at 8:21-22.

Accordingly, Cisco adequately pled its promissory-estoppel claim in the alternative to its breach-of-contract claim. For these reasons, the Court should deny AllPlus's motion.

7

**C.     As A Separate Grounds for Denying the Motion, The Court Cannot Rule "As a Matter Of Law" Because Material Facts Are At Issue.**

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that *no material issue of fact remains* to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (emphasis added). A review of the pleadings reveals material issues of fact that prevent this Court from ruling purely as "a matter of law."

For example, AllPlus alleges that it entered the 2017 Guarantee "to guaranty an antecedent debt of another," Dkt. No. 1-2 at 4, ¶ 18, whereas Cisco alleges AllPlus entered the 2017 Guarantee "so that Alcateia could obtain a line of credit." Dkt. No. 36 at 7:19. In other words, AllPlus alleges it guaranteed debt that predated the 2017 Guarantee, whereas Cisco alleges the 2017 Guarantee was entered for new, subsequent (not antecedent) debt.

This distinction is material. AllPlus's theory for invalidating the 2017 Guarantee relies on the guaranteed debt being "antecedent". *See*, *e.g.*, Dkt. No. 46 at 6:12-14 ("The Guarantee Is Invalid and Unenforceable Because It Seeks to Guarantee An *Antecedent* Debt Of Another"); at 7:21-23 ("the Guarantee expressly seeks to guarantee Alcateia's *antecedent* debt without any consideration from CISCO distinct from CISCO's original obligation under the Distributor Agreement"); at 7:27-28 ("the consideration supporting the Distributor Agreement *had long since been exchanged and realized*.") (emphasis added). Further, whether the secured debt was "antecedent" could determine the dispute over consideration: *Pacific States Savings & Loan Co. v. Stowell* held that "[a] guaranty of an *antecedent* debt of another must be supported by a consideration distinct from the original obligation." 7 Cal. App. 2d 280, 281 (1935) (emphasis added). The reverse is also true: If a "'guaranty was written and signed *before* delivery [of a note] . . . there was a good consideration for the guaranty.'" *First Bank & Tr. v. Rothman*, 2002 WL 31087841, at *5 (Cal. Ct. App. Sept. 19, 2002) (emphasis added) (citing *Kennedy & Shaw Lumber Co. v. S.S. Constr. Co.*, 123 Cal. 584, 587 (1899)).

Accordingly, a material issue of fact exists on the face of the pleadings—whether the 2017 Guarantee is for antecedent or subsequent debt. That factual dispute precludes judgment as a matter of law.

8

**D.      Should the Court Grant the Motion, Cisco Requests Leave to Amend to Allege Further Factual Allegations to Cure Any Deficiencies.**

Should the motion be granted, Cisco respectfully requests leave to file an amended counterclaim to plead additional factual allegations.  *See Lewis*, 2018 WL 6169348, at *2 ("[w]hen a court grants a  Rule 12(c) motion, leave to amend should be freely given if it is possible that further factual allegations will cure any defect.").  And if Cisco needs to amend, Cisco would, at a minimum, plead additional factual allegations consistent with the following:

- In 2017, Alcateia ran into credit-hold issues with Cisco as its balance neared or exceeded the $400,000 credit limit, and as a result, Cisco refused to ship product until the credit balance was paid down.
- Two weeks before AllPlus executed the 2017 Guarantee, Alcateia and AllPlus provided financial statements to Cisco to demonstrate their credit worthiness, and Cisco requested a new guarantee with AllPlus to match the requested credit line.
- A few days after AllPlus executed the 2017 Guarantee—in an email titled "CREDIT LIMIT - 500K!"—a Cisco representative congratulated Alcateia on its newly-approved $500,000 credit line guaranteed by AllPlus.

These factual allegations would serve to bolster Cisco's claims, although Cisco contends its claims are adequately pled in their current form.  Accordingly, Cisco respectfully requests that, should the Court grant the pending motion, Cisco be granted leave to amend its Counterclaim.

Dated: June 28, 2021                         Respectfully submitted,

*s/ Isaac Walrath*

Isaac Walrath (CA 317767)
Benesch, Friedlander, Coplan & Aronoff LLP
One Market Street – Spear Tower, 36th Floor
San Francisco, California 94105
Telephone:   (628) 600-2250
Facsimile:    (628) 221-5828
iwalrath@beneschlaw.com

Michael Meuti (CA 227939)
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone:   (216) 363-4500
Facsimile:    (216) 363-4588
mmeuti@beneschlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of June 2021, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Isaac Walrath
Isaac Walrath
*Attorney for Defendant Cisco Systems, Inc.*